UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDY GALLEGOS,<br><br>              Plaintiff,<br><br>    v.<br><br>CORRECTIONAL MEDICAL SERVICES; APRIL DAWSON; PAUL DELAPLAIN; and KEVIN KAAE;<br><br>              Defendants. | Case No. 3:10-cv-00300-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

       Pending before the Court is a Motion to Dismiss filed by Defendants Correctional Medical Services, Dawson, and Kaae (CMS Defendants). *See* Dkt. 13. Also pending are the following motions filed by Plaintiff: (1) Motion to Deny Dismissal (Dkt. 15); (2) Motion for Summary Judgment (Dkt. 18); (3) Motion for Extension of Time (Dkt. 20); and (4) Motion for Leave to Supplement Plaintiff's Motion to Deny Dismissal (Dkt. 23).

       Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on

**MEMORANDUM DECISION AND ORDER - 1**

the record before this Court without oral argument. *See* D. Idaho Local Rule 7.1(b). The Court concludes that Plaintiff did not exhaust his administrative remedies and will dismiss this case without prejudice.

## PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho Correctional Institution in Orofino (ICI-O). At all times relevant to Plaintiff's Complaint, he was incarcerated at Idaho Maximum Security Institution (IMSI). Plaintiff, a diabetic, developed a sore on the second toe of his left foot, causing a severe infection. *Compl.*, Dkt. 3-1 at 1. He alleges that at IMSI he received inadequate medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and that, as a result, his toe had to be amputated. *Initial Review Order*, Dkt. 7 at 2-4.

Plaintiff filed this civil rights suit under 42 U.S.C. § 1983 against the CMS Defendants. Plaintiff also brought claims against Physician's Assistant Paul Delaplain, who has not yet been served with the Complaint.[1] In addition to his federal claims, Plaintiff also asserted state law negligence and medical malpractice claims against all the defendants.

On February 28, 2011, the CMS Defendants moved to dismiss this case for failure to exhaust administrative remedies. *Mot. to Dismiss*, Dkt. 13. On March 9, 2011,

---

[1] On December 30, 2010, counsel for the CMS Defendants waived service and notified the Court that counsel is not representing Defendant Delaplain. Dkt. 11.

**MEMORANDUM DECISION AND ORDER - 2**

Plaintiff filed his response and also moved for a denial of dismissal. *Mot. to Deny Dismissal*, Dkt. 15. On March 23, 2011, the CMS Defendants filed their reply in support of their Motion to Dismiss. *Reply*, Dkt. 16. On April 1, 2011, Plaintiff filed another document – purportedly an additional reply to the CMS Defendants' Motion to Dismiss – which also contained a request for summary judgment. *Reply to Defs' Reply and Mot. for Summ. Jmt.*, Dkt. 18.

Plaintiff then filed a Motion for an Extension of Time. The CMS Defendants opposed the motion because "briefing on the issue of exhaustion was complete" and Plaintiff had not identified "what filing he needs further time to oppose." *Opp. to Mot. for Ext. of Time*, Dkt. 21 at 2. Plaintiff answered this question on June 6, 2011, when he moved to supplement his Motion to Deny Dismissal. *Mot. for Leave to Suppl.*, Dkt. 23.; *see also Pl's Suppl. Reply and Objection*, Dkt. 23. The CMS Defendants oppose the Motion to Supplement.

All motions are now ripe for adjudication.

### PLAINTIFF'S MOTION FOR EXTENSION OF TIME and MOTION TO SUPPLEMENT

Plaintiff's Motion for an Extension of Time will be granted, and his Motion to Supplement is deemed timely. The Court will also grant the Motion to Supplement.

Instead of simply opposing the CMS Defendants' Motion to Dismiss, Plaintiff responded with a Motion to Deny Dismissal. This is not normally the process followed, because such an approach would allow the party opposing a motion to file what is, in

**MEMORANDUM DECISION AND ORDER - 3**

essence, an extra brief. The CMS Defendants are correct that Local Rule 7.1 allows only three briefs when a motion is filed: (1) the moving party's memorandum in support of the motion; (2) the non-moving party's response in opposition to the motion; and (3) the moving party's reply in support of the motion. However, Plaintiff is proceeding pro se, and the Court will not deny him his opportunity to fully present his evidence and arguments merely because he has not strictly complied with the Court's procedural rules. The Court has therefore considered all of Plaintiff's submissions in ruling on the pending motions.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if a party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Plaintiff's Motion for Summary Judgment is premature, because there is nothing in the record yet regarding the merits of the case other than Plaintiff's allegations in the Complaint. The CMS Defendants have not yet answered, nor were they required to do so before the Court considered their Motion to Dismiss. *Initial Review Order* at 10. Plaintiff's Motion for Summary Judgment will be denied.

**MEMORANDUM DECISION AND ORDER - 4**

## CMS DEFENDANTS' MOTION TO DISMISS

**1.     Exhaustion Requirements**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[2] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The *Jones* court explained the important policy concern behind the exhaustion requirement: "allow[ing] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Idaho law also requires that a prisoner exhaust his administrative remedies before filing a civil lawsuit related to the conditions of his confinement. Section 19-4206(1) of the Idaho Code provides that "[u]nless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no . . . civil action shall be brought by [the prisoner] . . . with respect to conditions of

---

[2] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

confinement until all available administrative remedies have been exhausted." This exhaustion requirement applies to claims regarding prison medical care. *See Drennon v. Idaho State Corr. Inst.*, 181 P.3d 524, 526, 530 (Idaho Ct. App. 2007) (affirming dismissal for failure to exhaust claims regarding, among other things, the prisoner's medical treatment). Like the exhaustion requirement in the PLRA, section 19-4206 requires that the prisoner meet procedural deadlines to properly exhaust his administrative remedies. *Butters v. Valdez*, 241 P.3d 7, 12 (Idaho Ct. App. 2010) (relying on federal law interpreting 42 U.S.C. § 1997e(a)).

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20; *see also Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) ("No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims") (internal quotation marks and alteration omitted)). The defendant bears the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).

If a plaintiff has failed to exhaust his administrative remedies, his claims are subject to dismissal without prejudice. *See Wyatt*, 315 F.3d at 1120. An inmate must exhaust his remedies prior to filing suit; exhaustion cannot be accomplished during a suit

**MEMORANDUM DECISION AND ORDER - 6**

or after a suit has been filed. *See McKinney v. Carey,* 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (suit dismissed without prejudice where prisoner attempted to exhaust administrative remedies during pendency of suit).

**2.      Grievance Process of the IDOC**

The IDOC's grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most directly involved" with the inmate's issue. *Affidavit of Sheryll Byrne*, Dkt. 13-2 at ¶5. If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form. *Id.* at ¶6. The Grievance Form has to be submitted within 30 days of the incident giving rise to the grievance. *Id.*

When submitting a Grievance Form, the inmate must attach a copy of the Concern Form, showing the inmate's attempt to settle the issue informally. Only one issue may be raised in each grievance. *Id.* at ¶7. Where, as here, the grievance involves a medical issue, the Grievance Form is "routed through medical staff supervised by the Health Services Administrator, who is employed by the Health Care Contractor." *Id.* at ¶8. The Health Services Administrator is charged with responding to the grievance. *Id.*

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision. The grievance policy requires that the inmate file an appeal within 5 days of receiving the response to the grievance. *Id.* at ¶9. In cases of medical grievances, the appellate authority is the Regional Manager or Vice President of

**MEMORANDUM DECISION AND ORDER - 7**

the medical contractor. *Id.* at ¶10. Not until the completion of all three of these steps – Concern Form, Grievance Form, and grievance appeal – is the grievance system exhausted. *Id.* at ¶11.

Prior to November 2007, the IDOC did not keep records of grievances submitted by inmates if those grievances were not processed for some reason. Since November 2007, all grievances are logged and recorded, even those that are not processed. *Id.* at ¶13. Grievances are logged into a computer database, which is searchable by an inmate's name or IDOC number, by grievance number, or by year. *Id.*

### 3.     Plaintiff Did Not Exhaust His Administrative Remedies

Plaintiff discovered the sore on his toe on November 18, 2008. *Compl.*, Dkt. 3-1 at 1. At issue, therefore, is Plaintiff's use of the IDOC grievance process from that date through April 16, 2009, when Plaintiff's toe was amputated.

#### A.     Findings Regarding Plaintiff's Use of the Grievance Process

Sheryll Byrne, the current Grievance Coordinator at IMSI, searched the grievance database for any grievances filed by Plaintiff.[3] *Byrne Affidavit* at ¶14. According to the exhibits attached to the Byrne Affidavit, on March 3, 2009 Plaintiff attempted to file a grievance regarding the treatment of his infected toe. Ex. C to *Byrne Affidavit*, Dkt. 13-2 at 31. This grievance was returned to Plaintiff "without action being taken" because

---

[3] Defendants initially included in their Motion grievance records and argument in connection with another inmate whose last name is also Gallegos, even though his first name and prisoner number are obviously different from Plaintiff's. Plaintiff pointed out that these records did not pertain to him, and Defendants have since withdrawn any argument regarding the grievance records of that other inmate. *See Mot. to Deny Dismissal* at 2; *Defs' Reply re Mot. to Dismiss*, Dkt. 16 at 2-3.

**MEMORANDUM DECISION AND ORDER - 8**

Plaintiff did not submit copies of any Concern Forms showing his attempts to resolve the issue informally. *Id.* at 30. Plaintiff apparently corrected this deficiency and resubmitted the grievance, because the record includes a Grievance Form showing that prison officials considered the resubmitted grievance, received on March 9, 2009,[4] on the merits. *Id.* at 42-44.

The grievance was logged as Grievance Number IM090000173. *Id.* at 42. The Director of Nursing told Plaintiff on March 16, 2009 that his care was appropriate because he had "seen the PA, the provider, have had X-rays, wound clinics, diabetic checks, and medication for your toe." *Id.* The Health Services Administrator concurred with the Director's response and denied Plaintiff's grievance on March 26, 2009. *Id.* at 43. Therefore, any appeal of this grievance had to be filed no later than five days later, on March 31, 2009.

But according to the documentation submitted by Plaintiff with his Motion to Deny Dismissal, Plaintiff did not appeal the denial of the March 3 grievance until May 11, 2009. *See* Exs. B1 and B2 to *Pl's Mot. to Deny Dismissal*, Dkt. 15-1 at 2-3. On May 13, 2009, the appeal was returned to Plaintiff "without action being taken" because Plaintiff "did not file the grievance . . . appeal within the time limit." Ex. C to *Byrne Affidavit*, Dkt. 13-2 at 34. Then-Grievance Coordinator Kim Reischman added a handwritten note: "5 days from receipt of level 2 Response (3-26-09)." *Id.*

---

[4] To avoid confusion, the Court will refer to the resubmitted grievance as "the March 3 grievance," as this is the date appearing on the initial grievance form submitted by Plaintiff.

**MEMORANDUM DECISION AND ORDER - 9**

Two days later, on May 15, 2009, Plaintiff attempted to file another grievance, describing his dissatisfaction with his medical treatment in terms virtually identical to those in the March 3 grievance.[4] *Id.* at 37. Plaintiff also sent a concern form to Reischman informing her that he never received any responses to his Concern Forms from the medical staff, but included his own copies of those forms in support of the grievance. Ex. to *Mot. to Deny Dismissal*, Dkt. 23-1 at 1.

On May 18, 2009, Reischman returned the May 15 grievance to Plaintiff, also "without action being taken." Ex. C to *Byrne Affidavit* at 36. Reischman told Plaintiff, "Your administrative remedies have been exhausted on this issue. Previous grievance . . . appeal number: IM090000173 was on this same topic." *Id.* That same day, Reischman also responded to Plaintiff's May 15 concern form and told him that he was "unable to

---

[4] In describing the problem in the March 3 grievance, Plaintiff stated,

> I have to have my toe cut off, because it got infected. I was asking medical day in and day out to look at my toe cause it didn't look good. And all the P.A. said was to keep it clean and gave me these little packets of onitment [sic]. I told them there was puss [sic] coming out of it and it was swallon [sic]. Dr. Dawson even looked at it too, and still didn't do anything at first until it was way to [sic] late. And now my toe has to be removed.

Ex. C to *Byrne Affidavit*, Dkt. 13-2 at 44.

The May 15 grievance was quite similar:

> I had to have my toe cut off, because it got infected. I was asking medical day in and day out to look at my toe. Because it was all red and swollen up. And all the P.A. said was to keep it clean and gave these packets of onitment [sic] to put on it. I told them there was puss [sic] coming out of it and it was bleeding a lot too. Dr. Dawson looked at it and still didn't do anything until it was way to [sic] late. I had my toe cut off on April-16-2009.

*Id.* at 37.

**MEMORANDUM DECISION AND ORDER - 10**

grieve this issue again. IM090000173 was on the exact same issue." Ex. to *Mot. to Suppl.* at 1.

In his Motion to Deny Dismissal, Plaintiff submitted copies of seven Concern Forms regarding his medical treatment, but he does not assert that he filed a medical grievance with respect to any of those Concern Forms other than (1) Grievance Number IM090000173 and (2) his attempted May 15 grievance. (*See* Exhibits I-L to Motion to Deny Dismissal, Dkt. 15-1, at 10-13.)

## B. Analysis

The CMS Defendants argue that because Plaintiff's appeal of the March 3 grievance was not filed until May 11, 2009, Plaintiff has failed to properly exhaust his administrative remedies regarding the medical treatment he received for his infected toe. *Defs' Mem. for Mot. to Dismiss*, Dkt. 13-1 at 13-14. They also argue that the May 15 grievance was "simply a backdoor attempt to grieve a claim and issue that had previously been addressed by Mr. Gallegos, but which he had failed to properly grieve." *Id.* at 14.

The Court agrees with the CMS Defendants that Plaintiff did not timely appeal the denial of the March 3 grievance. Instead of filing the appeal within five days of the grievance denial, Plaintiff waited approximately six weeks to appeal. Because Plaintiff did not meet the IDOC's deadline with respect to the grievance appeal, he did not properly exhaust his administrative remedies.

Plaintiff counters that he "has diligently, in good faith pursued an adequate grievance process." *Mot. to Deny Dismissal*, Dkt. 15 at 2. However, he does not offer an

**MEMORANDUM DECISION AND ORDER - 11**

explanation of why he failed to file a timely appeal of the March 3, 2009 grievance, other than his claim that he "fully exhausted his administrative remedies for officials interfeared [sic] with his exhaustion process at no fault of his own." *Suppl. Reply* at 2.

For this official interference argument, Plaintiff relies primarily on Reischman's statements on May 18, 2009 that Plaintiff had exhausted his administrative remedies. He claims that Reischman's response to the May 15 Concern Form actually constitutes "the Level - 3 Appellate Authority Response" to his grievance. *Suppl. Reply* at 3. Thus, goes the argument, he exhausted all three levels of the grievance process: Concern Form, Grievance Form, and grievance appeal.

The grievance policy is clear, however, that a Concern Form is the *first* step of the process, the purpose of which is to allow inmates and staff members to resolve issues informally before the inmate files a grievance; it is not the final step. Ex. B to *Byrne Affidavit*, Dkt. 13-2 at 12-24. Additionally, Reischman's response to Plaintiff's Concern Form did not pertain to the March 3 grievance, but rather the new grievance that Plaintiff filed on May 15, 2009. Ex. to *Mot. to Suppl.* at 1.

Plaintiff also states that it was Reischman's fault that he did not properly exhaust because she informed him that his remedies were, in fact, fully exhausted. *Suppl. Reply* at 3. If the May 11 grievance appeal had not already been untimely, the Court would agree with Plaintiff. An official's statement to an inmate that the inmate's remedies have been exhausted – and the prisoner's reliance on that statement to cease pursuing an administrative remedy – would excuse the inmate from any further exhaustion. *See, e.g.,*

**MEMORANDUM DECISION AND ORDER - 12**

*Nunez v. Duncan*, 591 F.3d 1217, 1229 (9th Cir. 2010) (holding that failure to exhaust is excused "[w]here prison officials have effectively prevented a prisoner from using the available procedures"); *Brown*, 422 F.3d at 935 ("[A] prisoner need not press on to exhaust further levels of review once he has . . . been reliably informed by an administrator that no remedies are available."). One can easily imagine a situation where such a statement would lull the inmate into believing that he did not need to pursue any further remedies. Therefore, if Reischman's response actually induced Plaintiff to miss a deadline or otherwise forgo using the grievance process, the CMS Defendants would not be entitled to rely on an exhaustion defense.

But that is not the situation in this case. Plaintiff's appeal of the March 3 grievance was untimely because it was not filed within five days after receiving the response to the grievance. The new grievance that Plaintiff filed on May 15, 2009 could not cure this deficiency because the appeal deadline for the March 3 grievance had already passed. Therefore, nothing Reischman said to Plaintiff on May 18, 2009 could have adversely affected Plaintiff's ability to comply with the grievance system's deadlines or with any other procedural rule.

Because Plaintiff did not properly complete the grievance process with respect to his medical treatment, his § 1983 claims against the CMS Defendants must be dismissed. 42 U.S.C. § 1997e(a). Because Plaintiff does not allege that he is currently in imminent danger of serious injury, his negligence and medical practice claims under state law must also be dismissed. I.C. § 19-4206(1).

**MEMORANDUM DECISION AND ORDER - 13**

4. **Defendant Delaplain**

Even though Defendant Delaplain has not been served and therefore has not joined the CMS Defendants' Motion to Dismiss, the exhaustion requirements of 42 U.S.C. § 1997e(a) and Idaho Code section 19-4206(1) apply equally to Plaintiff's claims against Delaplain. Thus, the Court will dismiss those claims as well.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Extension of Time (Dkt. 20) is GRANTED.

2. Plaintiff's Motion for Leave to Supplement Plaintiff's Motion to Deny Dismissal (Dkt. 23) is GRANTED.

3. Plaintiff's Motion for Summary Judgment (Dkt. 18) is DENIED.

4. Plaintiff's Motion to Deny Dismissal (Dkt. 15) is DENIED.

5. The CMS Defendants' Motion to Dismiss (Dkt. 13) is GRANTED. This case is DISMISSED without prejudice.

DATED: **August 23, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge